UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANDA BROCKMAN,<br><br>                                         Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, JASON MARCUSEN, DEPUTY GREENE #7131, DEPUTY PHONGKHAMMY #0184, SERGEANT ALLISTER #7026, DISTRICT ATTORNEY SUMMER STEPHAN, DEPUTY DISTRICT ATTORNEY JILL LINDBERG and DOES 1 through 30, inclusive,<br><br>                                         Defendants. | Case No.:  22-CV-0512-GPC-BLM<br><br>**ORDER:**<br>**(1) GRANTING MOTION TO DISMISS DOE DEFENDANTS AND DEPUTY PHONGKHAMMY;**<br>**(2) DENYING MOTION TO DISMISS 1ST, 3RD, AND 5TH CLAIMS FOR RELIEF;**<br>**(3) GRANTING IN PART MOTION TO DISMISS 4TH CLAIM FOR RELIEF; AND**<br>**(4) GRANTING MOTION TO DISMISS 2ND, 6TH, AND 7TH CLAIMS FOR RELIEF.**<br><br>**[ECF No. 16]** |

Pending before the Court is Defendants' Motion to Dismiss Plaintiff Chanda Brockman's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (ECF No. 16.)  For the reasons that follow, the Court GRANTS the motion in part.

1

## I.     BACKGROUND

Plaintiff Chanda Brockman seeks damages against the County of San Diego as well as several County officials for allegedly committing several civil rights violations.  In her operative Second Amended Complaint ("Complaint" or "SAC") Ms. Brockman alleges that Deputies Jason Marcusen, John Greene, Lingko Phongkhammy, and Sergeant Cathy Allister (collectively "the Deputy Defendants"); District Attorney Summer Stephan and Deputy District Attorney Jill Lindberg (collectively "the District Attorney Defendants"); and Does 1 through 30 were all "duly authorized employees and agents of the County of San Diego, [("the County")] San Diego County Sheriff's Department, who were acting under color of law within the course and scope of their respective duties as police officers/deputies and with the complete authority and ratification of their principal," the County.  (SAC ¶ 5 (font attribute removed).)  The Defendants move to dismiss under Federal Rule of Civil Procedure, rule 12(b)(6), "failure to state a claim upon which relief can be granted."

As alleged by Ms. Brockman, on May 7, 2021 at 4:05 PM she and her coworker, Juan Carlos Lomeli, arrived at an auto parts store in Alpine, California.  (SAC ¶ 16.)  Mr. Lomeli went inside the store while Ms. Brockman waited outside.  (SAC ¶ 16.)  At 4:08 PM a purse was reportedly stolen from an unattended, parked vehicle over a mile away from the auto parts store.  (SAC ¶¶ 16-17; ECF No. 16-1 at 10.[1])  A person described as a "Hispanic male wearing a white shirt" and accompanied by a female was seen breaking the window to the parked car.  (SAC ¶¶ 19-20.)  At 4:11 PM the Sheriff's Department announced a "call out" for the incident to which Deputy Marcusen answered and was dispatched.  (SAC ¶ 18.)

---

[1] Page numbers are based on the CM/ECF pagination.

22-CV-0512-GPC-BLM

Shortly after Mr. Lomeli returned to the car, Deputy Marcusen purportedly directed Deputy Greene to stop Ms. Brockman's car to detain "a burglary suspect."  (SAC ¶ 19; ECF No. 23 at 7.)  "Deputy Green[e] told Mr. Lomeli that Mr. Lomeli and [Ms.] Brockman matched the description of two Hispanics identified committing a burglary just a few minutes earlier."  (SAC ¶ 22.)  Mr. Lomeli and Ms. Brockman complied with the Deputies' commands, and Mr. Lomeli told Deputy Greene that he "could not have committed any crime" because he had been at the automotive parts store.  (SAC ¶ 22.)

While Deputy Greene explained "that a Hispanic male was seen smashing a car window and taking a purse from the car," Ms. Brockman "overheard a female Deputy exclaim it was not the right type of car."  (SAC ¶ 23.)  Ms. Brockman told Deputy Greene that "her cell phone locator function was active and on all day," then offered the phone to Deputy Marcusen and Sergeant Allister to confirm her whereabouts.  (SAC ¶ 24.)  The officers accepted "the phone and were able to confirm" Ms. Brockman's whereabouts showing that she and Mr. Lomeli arrived at the auto parts store at 4:05 PM—recall that the purse was reportedly stolen at 4:08 PM (SAC ¶ 17)—and made no stops between their place of work and the automotive parts store during the relevant time period.  (SAC ¶ 24.)

During the stop, officers also asked Ms. Brockman and Mr. Lomeli if the car could be searched.  (SAC ¶ 25.)  After answering "no," Ms. Brockman was "handcuffed as tight as possible causing extreme pain" then a deputy picked her up "off her feet and threw her into the back of a . . . patrol cruiser."  (SAC ¶ 25.)  Her 15-year-old dog, which had been inside Ms. Brockman's car, was also put inside a different cruiser.  (SAC ¶ 25.)  Ms. Brockman was able to watch the deputies "search[] the entire car, including inside the trunk."  (SAC ¶ 25.)  No purse was recovered and Ms. Brockman "was not advised of her rights."  (SAC ¶ 26.)  Deputy Marcusen told Ms. Brockman to "admit to the crime as she was going to jail, and that she was an exact physical match to the suspect"; he further "demanded to know where the stolen purse was located."  (SAC ¶ 26.)

During Ms. Brockman's detention in the police cruiser she observed another patrol cruiser enter the parking lot.  (SAC ¶ 27.)  A man that did not appear to be an officer or a deputy exited the vehicle and apparently identified Mr. Lomeli as the man involved in the burglary while Mr. Lomeli stood "50 yards away" with his back to the witness.  (SAC ¶ 27.)  Deputy Marcusen then advised Ms. Brockman of her rights and transported her to the Alpine Sheriff Station.  (SAC ¶ 28.)  Ms. Brockman was interrogated in a holding cell for about two hours and she repeatedly expressed concern to the deputies about her dog's advanced age.  (SAC ¶ 28.) Deputy Marcusen emphasized that "as long as she admitted to the crime [Ms.] Brockman could have her dog back and could go home," but "otherwise her dog would go to the pound."  (SAC ¶ 28.)  Ms. Brockman was then jailed for six hours before being released.  (SAC ¶ 29.)

On May 12 Deputy Marcusen parked his patrol cruiser in Ms. Brockman's driveway and returned her cell phone.[2]  (SAC ¶ 24.)  He told her that she should not worry because he did not "think they [we]re going to file on the case."  (SAC ¶ 24.)  About two weeks later Ms. Brockman and Mr. Lomeli contacted the County about their wrongful arrest and detention and "served a formal Public Records Request on the San Diego County Sheriff's department for any/all documents related to the wrongful arrest and detention."  (SAC ¶¶ 77-78.)  The Sheriff's department declined to produce any documents, (SAC ¶ 79) and within the following eight months Ms. Brockman was twice given a Notice to Appear for a preliminary hearing, twice charged with burglary, and twice had the Court dismiss "the charges at the initial preliminary hearing for lack of evidence/proof."  (SAC ¶¶ 31-30, 80-84.)

In the aftermath of these events Ms. Brockman raises seven claims for relief concerning Fourth Amendment violations for detention without reasonable suspicion,

---

[2] Ms. Brockman bought a new cell phone in the interim.  (SAC ¶ 24.)

1   arrest without probable cause, and unconstitutional municipal custom, practice, or policy
2   in violation of 42 U.S.C. § 1983 and California Civil Code § 52.1 (the Bane Act); false
3   arrest/imprisonment; negligence; battery; and First Amendment violations for criminal
4   charges being brought as unlawful retaliation.  (SAC ¶¶ 33-87.)  The named Defendants
5   ask the Court to dismiss all claims for relief for failure to state a claim upon which relief
6   can be granted.  (ECF No. 16 at 1-2.)

7   **II.    LEGAL STANDARD**

8        Rule 12(b)(6) permits a court to dismiss a complaint when the plaintiff has failed "to
9   state a claim upon which relief can be granted."  "Dismissal can be based on the lack of a
10  cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal
11  theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).
12  Rule 8(a)(2) requires that the plaintiff set forth "a short and plain statement of the claim
13  showing that the pleader is entitled to relief."   The United States Supreme Court has
14  interpreted Rule 8(a)(2) as requiring that the complaint "give the defendant fair notice of
15  what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*,
16  550 U.S. 544, 545 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41,
17  47 (1957)).

18       "To survive a motion to dismiss, a complaint must contain a sufficient factual matter,
19  accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*,
20  556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible
21  when it contains factual allegations "that allow[] the court to draw the reasonable inference
22  that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the
23  elements of a cause of action, supported by mere conclusory statements, do not suffice."
24  *Id.*  Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual
25  content,' and reasonable inferences from that content, must be plausibly suggestive of a
26  claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th
27
28

5

Cir. 2009). "All reasonable inferences must be drawn in favor of the non-moving party." *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' " i.e., "the amendment would be futile." *DeSoto c. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serve-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## III.   DISCUSSION

### A.   Ms. Brockman Did Not Adequately Allege Facts Against Doe Defendants Or Against Deputy Phongkhammy.

Each of Ms. Brockman's claims for relief include allegations that certain yet-unidentified "Does" are liable for her injuries. (*See* SAC ¶¶ 10, 33-87.) Does 1 through 24 appear to have been involved in her detention and arrest, (*see* SAC ¶¶ 34, 62-64, 71; ECF No. 23 at 13), while Does 25 through 30 appear to have been involved in hiring, supervising, training, and/or disciplining the Deputy Defendants and Does 1-24 (*see* SAC ¶ 41. *But see* ECF No. 23 at 13 (describing subset of Does as working for prosecutor's office)); all are allegedly "authorized employees and agents of [the County], San Diego County Sheriff's Department," (SAC ¶ 5). The Defendants argue that Ms. Brockman failed to satisfy federal pleading requirements regarding the Doe Defendants because she does not refer to them individually or allege specific facts to demonstrate how each Doe Defendant violated her constitutional rights. (ECF No. 16-1 at 14-15.) The Defendants argue that this insufficiency in the Complaint warrants dismissing at least the Doe Defendants and possibly the entire case because the "Doe Defendants impact and underpin all [the] causes of action." (*Id.*) The Defendants similarly argue that Ms. Brockman's claims against Deputy Phongkhammy must be dismissed for failing to raise any factual allegations against him. (ECF No. 16-1 at 15-16.)

Ms. Brockman responds that she properly utilized the Doe Defendants in her Complaint. She explains that there are two Doe Defendant groups: "(a) those unknown officers at the scene of the wrongful detention and arrest; and (b) unknown employees at the prosecutor's office working in consort [sic] with the Sheriff's [Office] to chill [Ms. Brockman's] first amendment rights." (ECF No. 23 at 13.) She argues that she sufficiently explained how these two groups violated her constitutional rights. (*Id.*) Ms. Brockman asserts, without citation to caselaw, that similar allegations containing Doe defendants have "routinely survived demurrer" in California courts. (*Id.*) Ms. Brockman does not specifically respond to the Defendants' argument that Deputy Phongkhammy should be dismissed absent any factual allegations against him in the Complaint. (*See* ECF No. 23 (absence, except to assert generally and without citation to Complaint that Deputy Phongkhammy contributed to the "sham line-up" and arrest (ECF No. 23 at 19, 27)).)

Plaintiffs "may refer to unknown defendants as 'Does' at this stage, [but] must nevertheless 'allege specific facts showing how each particular doe defendant violated [her] rights." *Thomas ex rel. Thomas v. County of San Diego*, No. 3:20-cv-1979, 2021 WL 2715086, at *3 (S.D. Cal. July 1, 2021) (second alteration in original) (quoting *Keavney v. County of San Diego*, No. 3:19-cv-01947, 2020 WL 4192286, at *4 (S.D. Cal. July 21, 2020)); *see also Leer v. Murphy*, 844 F.2d 628, 624 (9th Cir. 1988) ("The [plaintiff] must set forth specific facts as to each individual defendant's" wrongdoing.). Federal courts will dismiss claims against Doe Defendants when the complaint—especially for § 1983 suits—does not "even minimally explain how any of the unidentified parties [the plaintiff] seeks to sue personally caused a violation of [the plaintiff's] constitutional rights." *Estate of Serna v. County of San Diego*, No. 3:20-cv-2096, 2022 WL 827123, at *3 (S.D. Cal. Mar. 18, 2022) (citing *Cavanaugh v. County of San Diego*, No. 3:18-cv-02557, 2020 WL 6703592, at *25 n.20 (S.D. Cal. Nov. 12, 2020)).

In contrast, California law allows for more general pleadings against unknown defendants.  Under California Code of Civil Procedure § 474 a plaintiff may designate a defendant "in any pleading or proceeding by any name" "[w]hen the plaintiff is ignorant of the name of a defendant" and asserts as much in the complaint or affidavit.  The complaint may then be amended with the appropriate name and served upon that individual within three years of filing.  Cal. Code Civ. Pro. §§ 474, 583.210; *Balon v. Drost*, 20 Cal. App. 4th 483, 487 (1993).  However, "[p]rocedural state laws are not used in federal court if to do so would result in direct collision with a Federal Rule of Civil Procedure," *Miller v. Sawant*, 18 F.4th 328, 337 (9th Cir. 2021) (quoting *Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 215 n.2 (D.C. Cir. 1999)), and the United States Supreme Court has interpreted Rule 8 to require that the plaintiff plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Accordingly, this Court concludes that when a plaintiff has claims against an unknown defendant, the plaintiff must still meet federal pleading standards when alleging facts against such defendants.

Here Ms. Brockman pleads that "Does 1 through 30 were duly authorized employees and agents of [the County]."  (SAC ¶¶ 5, 6, 8.)  Her description of the facts giving rise to her causes of action largely does not specify or describe any actions by any Doe Defendants.  (*See* SAC ¶¶ 15-32.)  Presumably, some of the Doe Defendants were those that handcuffed her, picked her up "off her feet and threw her into the back of a different patrol cruiser," and searched her vehicle, but she does not specifically identify those officers as Doe Defendants.  (*See* SAC ¶ 25.)  For most claims for relief Ms. Brockman makes conclusory allegations against the Doe Defendants.  For example, in her claim for relief under § 1983, Ms. Brockman claims that Does 1 through 24 detained her without reasonable suspicion and arrested her without probable cause, (SAC ¶ 36, 62) and that Does 25 through 30 deprived Ms. Brockman of her rights and liberties under the Fourth and

8

Fourteenth amendments by "acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of the Plaintiff," (SAC ¶ 41).  Ms. Brockman fails to make any specific allegations against any individual Doe Defendants in relation to the basis of this suit.  *See Thomas*, 2021 WL 2715086, at *3 (granting with leave to amend complaint that "vaguely claim[ed] that all twenty Doe Defendants acted negligently by 'refusing to provide medical care to [plaintiff] while he was suffering from a serious medical condition' "); *Keavney*, 2020 WL 4192286, at *4 (dismissing plaintiff's "vague claims against unnamed 'medical staff' and 'kitchen staff' ").

The Court GRANTS Defendants' motion to dismiss the Doe Defendants with leave to amend.

Like with the Doe Defendants, Ms. Brockman's Complaint does not raise any specific factual allegations against Deputy Phongkhammy.  (*See* SAC ¶¶ 15-32 (absence).) Her claims for relief also do not mention any factual allegations against Deputy Phongkammy.  (*See* SAC ¶¶ 33-87.)  Ms. Brockman does not argue in her response to the Defendants' motion to dismiss that she raised adequate factual allegations against Deputy Phongkhammy.  (*See* ECF No. 23 (absence).)

The Court GRANTS Defendants' motion to dismiss Deputy Phongkhammy with leave to amend.

///

///

**B.      Ms. Brockman's First Cause Of Action Is Not Dismissed For Failing To State A Claim.[3]**

Ms. Brockman's first cause of action accuses the Deputy Defendants of conducting an "unreasonable search and seizure—Detention and arrest" under 42 U.S.C § 1983. (SAC ¶¶ 33-39.)  Ms. Brockman asserts that the Deputy Defendants "detained [her] without reasonable suspicion" and arrested her without probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution.  (SAC ¶ 34, 36.)  She alleges that this was done with "willful, wanton, malicious, and . . . reckless disregard for [her] rights and safety . . . and therefore warrants the imposition of exemplary and punitive damages as to" the Deputy Defendants.  (SAC ¶ 37.)  Ms. Brockman seeks compensatory and punitive damages.  (SAC ¶ 38.)

The Fourth Amendment instructs that people have a right to be free from "unreasonable searches and seizures."  *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.' ").  "The Fourth Amendment . . . applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *Brown v. Texas*, 443 U.S. 47, 50 (1979).  "Arrests and detentions are both 'seizures' under the Fourth Amendment, but only the former requires a showing of probable cause, while the latter can be justified by reasonable suspicion of criminal activity."  *United States v. Charley*, 396 F.3d 1074, 1079 (9th Cir. 2005).

The Defendants argue that Ms. Brockman failed to state a claim upon which relief can be granted under the Fourth Amendment.  (ECF No. 16-1 at 16-22.)

---

[3] Because the Court has dismissed the claims against Deputy Phongkhammy and the Doe Defendants, any descriptions of Ms. Brockman's claims will omit references to Deputy Phongkhammy and the Doe Defendants when irrelevant.

1

2

**1.    Ms. Brockman sufficiently raised a claim of detention without reasonable suspicion to survive a motion to dismiss.**

3      The parties agree that an officer must have reasonable suspicion to detain someone.

4  (ECF No. 16-1 at 16; ECF No. 23 at 14.)  To the extent that reasonable suspicion may be

5  quantified, the Ninth Circuit has described it as more than a "mere hunch" but less than

6  probable cause.  *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013)

7  (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)).  "Reasonable suspicion is a

8  'commonsense, nontechnical conception[] that deal[s] with "the factual and practical

9  considerations of everyday life on which reasonable and prudent men, not legal

10 technicians, act." ' "  *Id.* (alterations in original) (quoting *Ornelas v. United States*, 517

11 U.S. 690, 696 (1996)).

12     The Defendants argue that Ms. Brockman's unreasonable detention claim fails both

13 for being "unduly conclusory" and, regardless of the subjective intentions for which she

14 was detained, her detention was objectively reasonable.  (ECF No. 16-1 at 17-19.)  They

15 argue that Ms. Brockman failed to allege facts supporting the conclusion that the Deputy

16 Defendants stopped her car because she was believed to be Hispanic and without

17 reasonable suspicion or probable cause.  (*Id.* at 17 (citing SAC ¶ 21).)  This ignores,

18 however, the alleged facts Ms. Brockman documented in her facts section which suggest

19 Deputies Greene and Marcusen may not have had reasonable suspicion for stopping Ms.

20 Brockman's vehicle.  She alleged that the Deputies' only "stated reason for stopping the

21 car was because the occupants included two Hispanics, one male and one female," and that

22 the "only physical description of the suspects given to the arresting officers was the

23 suspects [were] one Hispanic male wearing a white shirt and one Hispanic female."[4]  (SAC

24

25

26 [4] Though absent from the Complaint, Ms. Brockman asserts in her response to the motion
   to dismiss that Mr. Lomeli was wearing a black shirt, not white, (ECF No. 23 at 15), and
27 that she is a "white non-Hispanic female," (*Id.* at 16).  The Defendants ask the Court to

28

11

¶¶ 19, 20.) She also alleges that an unidentified female Deputy exclaimed that "it was not the right type of car."  (SAC ¶ 23.)  And even if the stop had been reasonable initially, an argument could be made that the Deputies no longer had reasonable suspicion to detain Ms. Brockman once they saw that her "phone locator function" demonstrated that she arrived at the automotive parts store at 4:05 PM, three minutes before the purse was reportedly stolen.  (SAC ¶¶ 24, 17.)  These are non-conclusory facts that Ms. Brockman alleged in support of her claim for unreasonable detention.

The Defendants alternatively argue that to the extent Ms. Brockman's claims for unreasonable detention contained factual allegations, the allegations support a finding of reasonable suspicion.  They argue that regardless of the Deputies' subjective reasoning for stopping Ms. Brockman, her alleged facts support finding that there was reasonable suspicion under an "objective reasonable man standard."  (ECF No. 16-1 at 18 (quoting *Nicacio v. U.S. I.N.S.*, 797 F.2d 700, 702-03, (9th Cir. 1985), *overruled in part on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999)).)

The Defendants argue that Ms. Brockman's allegations support a reasonable suspicion finding by framing them as follows:

> (1) the officers *did* provide "stated reasons" for the arrest; (2) . . . Mr. Lomeli was wearing clothing that apparently matched the suspect; (3) . . . the individual who committed the crime was accompanied by a female, as was Mr. Lomeli, in a vehicle; and

take judicial notice of Ms. Brockman's October 2021 Claim Against the County of San Diego, submitted to the County's Board of Supervisors, (ECF No. 16-3 at 2-3, 7-9), in which she refers to herself as "Caucasian," (*id.* at 9).  Ms. Brockman does not object. (*See* ECF No. 23 (absence).)  The claim is referenced in Ms. Brockman's Complaint, (*see* SAC ¶ 11) and the Court takes judicial notice of it.  Because assertions about Mr. Lomeli's shirt color were not present in the Complaint, the Court does not consider that factor at this time. *See Rivas v. New Century Mortg. Corp.*, No. 09cv737, 2010 WL 330225, at *3 (S.D. Cal. Jan. 20, 2010) ("Additional information contained in an opposition to a motion to dismiss does not cure the defects in Plaintiff's original pleading.").

1

2

3

> (4) . . . the location of the [auto parts store] where [Ms. Brockman] and [Mr.] Lomeli were detained *was only approximately 1.3 miles away from the location of the purse theft.*[5] (ECF No. 16-1 at 18 (emphasis in original).)

4

5

6

7

8

9

10

11

12

Defendants then draw comparisons to two district court cases in which the courts found reasonable suspicion existed when "three individuals were in an alley two blocks from where a mugging had been reported and bore similarities to description of the three suspects," (*Id.* at 18-19 (citing *Gillis v. City & County of San Francisco*, No. C 08-3871 RS, 2011 WL 4404138, at *3 (N.D. Cal. Sept. 21, 2011)), and when three individuals were located on the same block and of the same race as described in a call reporting "drug dealing activity," *United States v. Howell*, No. CR06-260C, 2007 WL 214259, at *1-3 (W.D. Wash. Jan 25, 2007). They also argue that Ms. Brockman's refusal "to allow the

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

5 The Defendants ask that the Court take judicial notice of the distance—as depicted by Google Maps—between the auto parts store and the location where the purse was reported stolen. (ECF No. 16-1 at 18 n.1; ECF No. 16-3 at 5.) Ms. Brockman objects to the Court taking judicial notice of the Google Maps exhibit as constituting hearsay, calling for speculation, and because it was not alleged in the Complaint. (ECF No. 23 at 6, 16.) Ms. Brockman does not point to any legal authority that would suggest this Court cannot take judicial notice of a fact at this stage. (*See id.*) She does not challenge the accuracy of the Google Map image, though she does point out that the distance is described as 1.4 miles, not 1.3 miles. (*Id.*; *see also* ECF No. 16-3 at 5.)

Given that the distance between the auto parts store and the alleged robbery is relevant to Ms. Brockman's Complaint, and that Google Maps' accuracy as to the distance of between the two points "cannot reasonably be questioned," *McCormack v. Hiedeman*, 694 F.3d 1004, 1008 n.1 (9th Cir. 2012), the Court TAKES JUDICIAL NOTICE of the fact that based on the addresses provided in the Complaint, the auto parts store is located about 1.4 miles by car from where the purse was reportedly stolen. *See* Fed. R. Evid. 201 ("The court may take judicial notice at any stage of the proceeding."). The Court is not admitting into evidence Defendant's Exhibit A at this time, nor is it taking notice of the amount of time Google Maps estimates it would take to travel by car from one point to the other. (*See* ECF No. 16-3 at 5.)

Deputy Defendants to search her vehicle . . . further bolstered reasonable suspicion." (ECF No. 16-1 at 19 (citing *United States v. Rodrigues*, No. 95-10497, 1996 WL 672320, at *2 (9th Cir. 1996) (discussing defendant's failure to cooperate—defendant refused to remove hands from jacket pockets—as contributing toward necessity of pat-down search for officer safety)).)

"An officer may make an investigatory stop if he is aware of specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Hernandez-Alvarado*, 891 F.2d 1414, 1416 (9th Cir. 1989).  These "articulable facts" that form "the basis of a reasonable suspicion are 'measured against an objective reasonable man standard, not by the subjective impressions of a particular officer.' " *Nicacio*, 797 F.2d at 702-03, (quoting *United States v. Mallides*, 473 F.2d 859, 861 (9th Cir. 1973)). "When reviewing an officer's reasonable suspicion, [the court] 'must look at the "totality of the circumstances." ' " *Valdes-Vega*, 738 F.3d at 1078 (quoting *Arvizu*, 534 U.S. at 273). "Reasonable suspicion requires *particularized* suspicion, and in an area in which a large number of people share a specific characteristic, that characteristic casts too wide a net to play any part in a particularized reasonable suspicion determination." *United States v. Montero-Camargo*, 208 F.3d 1122, 1134 (9th Cir. 2000).

At this stage, Ms. Brockman has alleged facts that, accepted as true, are sufficient to state a claim to relief that is plausible on its face.  The Court observes two discrete points in Ms. Brockman's description of the facts that are important in the analysis for whether she was unreasonably detained:  the initial stop by Deputies Greene and Marcusen (SAC

¶¶ 19-25), and the officers' decision to extend the stop to allow for a search of Ms. Brockman's vehicle and witness identification, (SAC ¶¶ 25-27).[6]

Although the Defendants present Ms. Brockman's factual allegations in a way that might lead one to infer the initial stop was reasonable, the Court is also able "to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678. Though the Complaint alleges the officers "stated reasons" for the stop—the occupants apparently matched the race and gender of two burglary suspects—in San Diego County these characteristics "cast[] too wide a net to play any part in a particularized reasonable suspicion determination."[7] *See Montero-Camargo*, 208 F.3d at 1133-34

---

[6] It is reasonable for the Court to infer that Ms. Brockman reasonably did not feel like she was free to go during the initial stop because she alleged Deputy Greene approached the vehicle with his hand on "his side arm and demanded Mr. Lomeli to put his hands on the car dashboard and to not move." (SAC ¶ 22.) The alleged facts suggest Ms. Brockman would have reasonably continued to believe she was not free to leave after the officers asked to search her vehicle because she was handcuffed and thrown into a police vehicle. (SAC ¶ 25.) *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) ("[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.").

[7] The Court takes judicial notice of that the United States Census Bureau report that 34.8% of San Diego County's population identifies as Hispanic or Latino, and 43.8% identifies as "White alone, not Hispanic or Latino." *See* U.S. Census Bureau, *San Diego County, California: Population Estimates, July 1, 2021*, QuickFacts, https://www.census.gov/quickfacts/fact/table/sandiegocountycalifornia/PST045221. 49.3% of the population is female. *Id.* Ms. Brockman emphasizes that the stop was further unreasonable because she is "clearly a white non-Hispanic woman and fair-skinned," (ECF No. 23 at 8), whereas the officers were allegedly told the Hispanic male suspect was accompanied by a Hispanic female, (SAC ¶ 20). The Defendants highlight that it would be an unreasonable inference to assume that a Hispanic person cannot be fair skinned. (ECF No. 25 at 7.) Indeed, Hispanic people can be fair skinned, which makes the "Hispanic" descriptor less useful in identifying a suspect without more. Whether police officers were looking for a male and female suspect that matched their understanding of

15

(utilizing census data by county).  The Defendants also suggest that the Complaint alleges "that Mr. Lomeli was wearing clothing that apparently matched the suspect."  (ECF No. 16-1 at 18.)  Though the Complaint could have been clearer, it does not suggest that Mr. Lomeli's shirt was white.  Rather, the Complaint states that "the only physical description of the suspects given to the arresting officers was the suspects['] race—one Hispanic male wearing a white shirt and one Hispanic female,"[8] (SAC ¶ 20) and that "[t]he stated reason for stopping the car was because the occupants included two Hispanics, one male and one female," (SAC ¶ 19).  These allegations do not suggest that Mr. Lomeli was wearing a shirt matching that of the reported suspect, only that they were stopped because the officers believed they matched the race and sex of the suspects.[9]  Ms. Brockman's location was about 1.4 miles from the reported crime, which can also support a plausible inference that it was unreasonable to stop her at this distance.  (SAC ¶¶ 16-17; ECF No. 16-3 at 5).  Defendants point to cases finding reasonable suspicion when suspects were located up to two blocks from the reported crime, (see ECF No. 16-1 at 18-19) but fail to engage with the fact that 1.4 miles is many times longer than two blocks from the reported theft.

---

how Hispanic or White and Hispanic people appear, these characteristics cannot constitute "particularized reasonable suspicion" in a county where Hispanic people represent 34.8% of the population.

[8] Defendants suggest that this reason for the stop was given to Ms. Brockman and Mr. Lomeli.  (See ECF No. 25 at 6.)  The Court interprets this allegation as explaining what the officers had been told about the suspects so as to explain that the stop was objectively unreasonable.

[9] Though absent from the Complaint, Ms. Brockman's assertion that "Mr. Lomeli was wearing a black shirt" (ECF No. 23 at 15) makes this inference more plausible.  Defendants argue that allegations about Mr. Lomeli wearing a black shirt did not appear in the Complaint and thus should not be considered on a motion to dismiss, (ECF No. 25 at 6,) and so the Court does not afford any weight to this factor at this time.

Finally, the Court finds that a plausible inference can be drawn from the factual allegations that the officers' decision to extend the stop for purposes of searching the vehicle and conducting a witness identification was also unreasonable. Defendants compare Ms. Brockman and Mr. Lomeli saying "no" when asked if their vehicle could be searched to a suspect being evasive and uncooperative when asked to remove his hands from his jacket pockets. (ECF No. 16-1 at 19.) *See Rodrigues*, 1996 WL 672320, at *2. This comparison is unpersuasive because the facts as alleged suggest that Ms. Brockman and Mr. Lomeli simply did not consent to the search of the vehicle, not that they were trying to evade the officers or refused to comply with instructions from the officers like the suspect matching the description of a reportedly armed person in *Rodrigues*. *See id.* Because the alleged reasons for the initial stop allow the Court to infer that the initial stop was unreasonable, the Court can also infer that Ms. Brockman's and Mr. Lomeli's refusals to consent to a search of the vehicle did not give rise to reasonable suspicion to extend the stop and Ms. Brockman's detention. *See Thomas v. Dillard*, 818 F.3d 864, 878-86 (9th Cir. 2016) (holding that suspect's "refusal to consent to a weapons search," in addition to appearing "startled and fidgety; wearing "clothing capable of hiding a weapon"; stepping "back in response to [the officer] reaching" toward the suspect; and the violent nature of the crime being investigated, did not arise to reasonable suspicion because such a policy would render the Fourth Amendment ineffective).

### 2.      Ms. Brockman sufficiently raised claim of arrest without probable cause.

Defendants argue that the facts, as alleged by Ms. Brockman, support finding that the Deputy Defendants had probable cause to arrest Ms. Brockman. (ECF No. 16-1 at 19-21.) They argue that because a witness positively identified Mr. Lomeli as the suspect, this alone would be sufficient to find the Deputy Defendants had probable cause to arrest Ms. Brockman. (*Id.* at 20.) The Defendants then point to the above-described allegations which

they argue gave rise to reasonable suspicion for the initial stops as support for probable cause for her arrest.[10]  (*Id.*)  Because the Court has determined that Ms. Brockman's alleged facts support a reasonable inference that the Deputy Defendants lacked reasonable suspicion when they stopped her and Mr. Lomeli, the Court looks only to whether Ms. Brockman's arrest after the witness identified Mr. Lomeli could nonetheless support an inference that the Deputy Defendants lacked probable cause to arrest.

Whether a witness identification provided probable cause for Ms. Brockman's arrest involves two related inquiries:  "(1) Did the officers employ an identification procedure so impermissibly suggestive as to give rise to a substantial likelihood of misidentification? . . . And if so, (2) did the witnesses exhibit sufficient indicia of reliability to protect the integrity of their identifications?"  *Grant v. City of Long Beach*, 315 F.3d 1081, 1086 (9th Cir. 2002) (citations omitted), *opinion amended on denial of reh'g*, 334 F.3d 795 (9th Cir. 2003).

Ms. Brockman has alleged that the vehicle containing the witness entered the "parking lot approximately no less than 50 feet away from where [she] and Mr. Lomeli were being detained."  (SAC ¶ 27.)  At the time, Ms. Brockman was allegedly being detained in the back of a patrol car.  (SAC ¶ 25.)  The witness then apparently identified Mr. Lomeli as the suspect while Mr. Lomeli stood "with his back to [the] witness some 50

---

[10] Defendants also argue that Ms. Brockman's § 1983 claim against Deputy Greene and Sergeant Allister must be dismissed because she "fails to plead their participation in connection with her arrest." (ECF No. 16-1 at 20.)  The Defendants then point to several paragraphs from the Complaint, apparently in support, (*Id.*), but those paragraphs *do* contain allegations against both Deputy Greene and Sergeant Allister.  (*See* SAC ¶¶ 22-24.)  Furthermore, Ms. Brockman's first cause of action combines accusations of unreasonable detention and arrest; Defendants raise no argument that Deputy Greene and Sergeant Allister were not involved in Ms. Brockman's detention prior to arrest.  (*See* ECF No. 16-1 at 18-21 (absence).) The Court does not consider this argument further.

yards away." (SAC ¶ 27.) These alleged facts suggest that the identification procedure was impermissibly suggestive and there were no indicia of reliability otherwise protecting the integrity of the identification. The witness had only one person to choose from and that person was already being detained by police; the witness allegedly stood a great distance from Mr. Lomeli and did not identify Mr. Lomeli by his face; and there is no indication that the witness was otherwise familiar with Mr. Lomeli such that the witness could make such an identification at that distance.

The Court concludes that Ms. Brockman's factual allegations can support the reasonable inference that the Deputy Defendants are liable for arresting her without probable cause in violation of the Fourth Amendment.

### 3. The Deputy Defendants are plausibly not protected by qualified immunity.

The Defendants argue that the Deputy Defendants are not liable to Ms. Brockman for any compensatory or punitive damages because they are protected by qualified immunity. (ECF No. 16-1 at 21-22.)

Government officials who perform discretionary functions generally are entitled to qualified immunity "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The United States Supreme Court has presented a two-part analysis for determining qualified immunity claims, which the Court may address in any order. *Pearson*, 555 U.S. at 236. Qualified

immunity protects government officials from liability for civil damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

On a motion to dismiss, the Court must draw all reasonable inferences "in favor of the non-moving party," *see Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010), and considers only whether the Complaint contains sufficient factual allegations, "accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### a. Whether the facts alleged show Deputy Defendants' conduct violated a constitutional right

Under the first prong, "the court determines whether the facts alleged, construed in the light most favorable to the injured party, establish the violation of a constitutional right." *Dunn v. Castro*, 621 F.3d 1196, 1200 (9th Cir. 2010).   Defendants have argued that the Deputy Defendants did not violate Ms. Brockman's constitutional rights because her detention and arrest were supported by reasonable suspicion and probable cause, respectively.   However, in viewing the evidence in the light most favorable to Ms. Brockman, the Court has concluded that Ms. Brockman has alleged facts such that an inference could plausibly be drawn that the Deputy Defendants did not have reasonable suspicion or probable cause to detain and then arrest her.  On a qualified immunity analysis, taking Ms. Brockman's alleged facts as true and construing them in the light most favorable to her, the Deputy Defendants acted unreasonably and violated Ms. Brockman's right to be free from unreasonable seizures.  Accordingly, the Court turns to the second prong of the qualified immunity analysis.

///

///

1

### b.   Whether the constitutional right was clearly established

2

3   Defendants argue that there is no authority that would put the Deputy Defendants on

4   notice that their conduct violated the Constitution.  (ECF No. 16-1 at 22.)  Ms. Brockman

5   argues that her "right not to be detained and arrested without reasonable suspicion and/or

    probable cause" was clearly established.  (ECF No. 23 at 20.)

6   Public officials are immune from a § 1983 suit "unless they have 'violated a statutory

7   or constitutional right that was "clearly established" at the time of the challenged

8   conduct.' "  *City and County of San Francisco, Cal. v. Sheehan*, 575 U.S. 600, (2015)

9   (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 767 (2014)).  "[T]he court decides whether

10  the right is clearly established such that a reasonable government official would have

11  known that 'his conduct was unlawful in the situation he confronted.' "  *Dunn*, 621 F.3d at

12  1199 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *receded from by Pearson*, 555

13  U.S. 223).   A clearly established right is one that is "sufficiently clear 'that every

14  "reasonable official would [have understood] that what he is doing violates that right." ' "

15  *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alteration in original) (quoting *al-Kidd*, 563

16  U.S. at 741).  The United States Supreme Court does "not require a case directly on point,

17  but existing precedent must have placed the statutory or constitutional question beyond

18  debate."  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *al-Kidd*, 563 U.S. at 741).  The

19  Supreme Court has reiterated that " 'clearly established law' should not be defined 'at a

20  high level of generality,' " but " 'particularized' to the facts of the case."  *White v. Pauly*,

21  137 S.Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742).   In an "obvious case"

22  however, clearly established can be met "without a body of relevant case law."  *Maxwell*

23  *v. County of San Diego*, 708 F.3d 1075, 1083 (9th Cir. 2013) (quoting *Brousseau v.*

24  *Haugen*, 543 U.S. 194, 199 (2004)).

25  On the second prong, the Court looks at whether the right was clearly established

26  prior to May 7, 2021, the date of the incident, such that the Deputy Defendants would have

27

28

22-CV-0512-GPC-BLM

known that their actions violated the Fourth Amendment when they allegedly (1) initially stopped Ms. Brockman and Mr. Lomeli only on the basis of their race and sex; (2) decided to extend the stop to search Ms. Brockman's car after she refused the search, had shown the deputies that her phone's GPS demonstrated that she had been at the auto parts store at the time of the theft, and another officer had pointed out that the vehicle was different than the one reported; and (3) arrested her after a witness identified Mr. Lomeli as the suspect from fifty yards way while Mr. Lomeli's back was turned to the witness.

### i.     The initial stop

The Complaint alleges that Ms. Brockman and Mr. Lomeli were stopped on the basis of race and sex.  (SAC ¶¶ 19-20.)  It is unclear from the Complaint whether the Deputy Defendants knew what type of vehicle they were looking for at that time and whether Mr. Lomeli was wearing a shirt that matched the suspect and so the Court does not consider these factors at this stage.  *See Moreno v. Baca*, 431 F.3d 633, 639 (9th Cir. 2005) (considering relevant facts known by officer in probable cause determination).

Courts have been clear that there must be "a 'particularized and objective basis' for suspecting legal wrongdoing" such that a person may be detained.  *See United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).  There is also clearly established law that "in an area in which a large number of people share a specific characteristic, that characteristic casts too wide a net to play any part in a particularized reasonable suspicion determination." *See United States v. Montero-Camargo*, 208 F.3d 1122, 1134 (9th Cir. 2000).  As Defendants acknowledge, a Hispanic person can appear fair skinned, (*see* ECF No. 25 at 7), meaning the officers could not have developed reasonable suspicion that a man and a woman at an auto parts store were involved in a theft 1.4 miles away of a race/ethnicity that reflects at least 34.8% of the

County's population.[11]  *Compare Gillis v. City & County of San Francisco*, No. C 08-3871 RS, 2011 WL 4404138, at *3 (N.D. Cal. Sept. 21, 2011), *with United States v. Howell*, No. CR06-260C, 2007 WL 214259, at *1-3 (W.D. Wash. Jan. 25, 2007) (finding reasonable suspicion when suspects were found within two blocks or reported incident).

Making all inferences in Ms. Brockman's favor, the Court concludes that a "reasonable official would [have understood] that" stopping Ms. Brockman and Mr. Lomeli without any particularized and objective basis for doing so violated their Fourth Amendment rights.  *See Reichle v. Howards*, 566 U.S. 658, 664 (2012).

### ii.    Extending the stop to search the vehicle

Having found that the facts as alleged thus far allow the Court to infer that Deputies Marcusen and Greene violated clearly established constitutional rights when they first stopped Ms. Brockman and Mr. Lomeli, the Court turns to whether any intervening events arose such that continuing to detain Ms. Brockman to search the vehicle did not violate clearly established law.  Between the initial stop and when Ms. Brockman was handcuffed and put in the back of a patrol car, the Complaint alleges the following relevant facts:  Ms. Brockman and Mr. Lomeli "complied with the deputy commands" (SAC ¶ 22); "a female Deputy exlaim[ed] it was not the right type of car" (SAC ¶23); Ms. Brockman shared phone location information with Deputy Marcusen and Sergeant Allister confirming they had arrived at the auto parts store several minutes before the purse was reportedly stolen (SAC ¶ 24; *see also* SAC ¶ 17 (time of reported theft)); and Ms. Brockman and Mr. Lomeli refused to give consent for the Deputies to search the vehicle (SAC ¶ 25).

The apparent vehicle and geolocation discrepancies count against the Deputy Defendants being able to form "a 'particularized and objective basis' for suspecting legal wrongdoing" such that Ms. Brockman's detention would have been warranted.  *See Arvizu*,

---

[11] *See* U.S. Census Bureau, *supra* note 7.

534 U.S. at 273 (quoting *Cortez*, 449 U.S. at 417-18).  And as Defendants acknowledge in their briefing, "[a]n individual's steadfast refusal to consent to a search cannot become the basis for reasonable suspicion, absent any other specific facts, to justify a forced search of that individual."  (ECF No. 25 at 7-8 (quoting *Thomas v. Dillard*, 818 F.3d 864, 884 (9th Cir. 2016).)

Making all inferences in Ms. Brockman's favor, the Court concludes that a "reasonable official would [have understood] that" deciding to extend Ms. Brockman's detention for the purposes of searching her vehicle and without any particularized and objective basis for doing so violated her Fourth Amendment rights.  *See Reichle*, 566 U.S. at 664.

### iii.  Arresting Ms. Brockman

There is clearly established law that probable cause is required for an arrest under the Fourth Amendment.  *See, e.g.*, *Brown v. Texas*, 443 U.S. 47, 51 (1979).  While witness identifications can give rise to probable cause, the law has also clearly established that this is not the case when "officers employ an identification procedure so impermissibly suggestive as to give rise to a substantial likelihood of misidentification" and the witness lacks "sufficient indicia of reliability to protect the integrity of their identifications."  *Grant v. City of Long Beach*, 315 F.3d 1081, 1086 (9th Cir. 2002), *opinion amended on denial of reh'g*, 334 F.3d 795 (9th Cir. 2003).

Ms. Brockman has alleged that while she and Mr. Lomeli were detained—Ms. Brockman in a patrol cruiser, Mr. Lomeli's exact location not described—a witness was driven to their location and identified Mr. Lomeli as the suspect while Mr. Lomeli was facing away from the witness some 50 yards away.  (SAC ¶¶ 25, 27.)  No purse was discovered after officers searched her vehicle.  (SAC ¶ 26.)

Though the identification occurred relatively shortly after the alleged incident, there is no indication that the witness was particularly familiar with Mr. Lomeli or otherwise had

any "indicia of reliability to protect the integrity" of the identification.   There is no indication that the witness obtained a particularly good look at the suspects, and the alleged description of the suspects given to police was not particularly precise to suggest familiarity.  *See Neil v. Biggers*, 409 U.S. 188, 199-200 (1972) (discussing indicia of reliability).   The Court looks to whether the identification process was so impermissibly suggestive that clearly established law has deemed it could not give rise to probable cause for an arrest.  *See Grant*, 315 F.3d at 1086.

For "obvious" reasons, presenting a suspect for identification when he has been detained by police and is apparently the only person presented to the witness is unduly suggestive.  *See Maxwell v. County of San Diego*, 708 F.3d 1075, 1083 (9th Cir. 2013).  Additionally, there is clearly established law that "showups"—identifications where the suspect is the only person shown—tend to be impermissibly suggestive.  For example, in *Neil v. Biggers* the Supreme Court affirmed that a showup at a police station was suggestive, but that the identification was otherwise reliable in light of the totality of the circumstances.   409 U.S. at 199-200 (victim spent up to half an hour with assailant, observing him under "adequate artificial light" and moonlight, and gave detailed description to police before showup).  The Supreme Court affirmed the conviction of a suspect that was identified by a witness/victim when the suspect was brought handcuffed into the hospital room and was the only Black person in the room only because doing so was "imperative" given the victim's grave injuries.  *Stovall v. Denno*, 388 U.S. 293, 295, 301-02 (1967), *overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314 (1987) (acknowledging that showups have been "widely condemned").   No comparable emergency scenario or suggestion that the witness was particularly familiar with Mr. Lomeli are present here.

Given the above-described lack of reasonable suspicion to stop Ms. Brockman and Mr. Lomeli, the alleged fact that the purse was not discovered, and the highly suggestive

witness identification absent indicia of reliability, the Court concludes that it may reasonably infer at this stage that the Deputy Defendants clearly violated Ms. Brockman's Fourth Amendment rights when they arrested her without probable cause.

Defendants' motion to dismiss for failure to state a claim as to Ms. Brockman's first cause of action is DENIED.

**C.   Ms. Brockman's Second Cause Of Action Is Dismissed For Failing To Allege Facts Sufficient To Support A Claim Of Municipal Liability.**

Ms. Brockman's second cause of action seeks to recover compensatory damages against the County under 42 U.S.C. § 1983 for maintaining an "unconstitutional custom or policy." (SAC ¶¶ 40-48.) She alleges that Doe Defendants 25 through 30 acted "with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of [Ms. Brockman], and of persons in [Ms. Brockman's] class, situation, and comparable position" by knowingly maintaining, enforcing, and applying an officially recognized custom, policy, and practice of:

> A. employing and retaining as police officers/deputies . . . [they] knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written San Diego County Sheriff Department policies;
> B. of inadequately supervising, training, controlling, assigning, and disciplining San Diego County Sheriff Department Officers/Deputies, and other personnel, who [the County] knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;
> C. by failing to adequately train officers, including [Deputy Defendants] and failing to institute appropriate policies, regarding racial profiling, including but not limited to, the unlawful stop and detention of Hispanic/Latinos at higher rates than other racial groups;
> D. by having and maintaining an unconstitutional policy, custom, and practice of racial profiling, including but not limited

to, the unlawful stop and detention of Hispanic/Latinos at higher rates than other racial groups;

E.   of   totally   inadequate   training   [County]   Sheriff Officers/Deputies, [Deputy Defendants], with respect to racial profiling, including but not limited to, the unlawful stop and detention of Hispanic/Latinos at higher rates than other racial groups.  (SAC ¶ 41.)

Ms. Brockman alleges that "the policies, practices, and customs implemented and maintained and still tolerated by Defendant Does 25 through 30, were affirmatively linked to and were a significantly influential force behind the injuries/damages sustained," including medical expenses, emotional suffering and distress, and loss of enjoyment of life. (SAC ¶¶ 45-46.)

The Defendants argue that this cause of action cannot support a claim for municipal liability.  First, because Ms. Brockman's allegations "are directed *not* against the County, but instead against 'Does 25 through 30.' "  (ECF No. 16-1 at 22.)  Second, because "the County cannot be liable in *respondeat superior* for the actions of" Doe Defendants 25 through 30.  (*Id.* at 23 (emphasis removed).)  Third, because the Complaint "fails to identify any specific policy that forms the basis of her claim" for direct municipal liability.  (*Id.*) And fourth, because the Complaint fails to "allege sufficient facts to support 'the existence of a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." ' "[12]  (*Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).)

Ms. Brockman responds that her claim for municipal liability should survive a motion to dismiss because the County demonstrated a deliberate indifference when it failed

---

[12] The Defendants also argue that this claim should be dismissed because it fails to allege facts against the Doe Defendants with any degree of specificity and because there is no constitutional violation upon which municipal liability can attach.  The Court has already addressed these arguments and need not discuss them further.

27

to implement procedural safeguards to prevent constitutional violations.  (ECF No. 23 at 21.)  She points to allegations that Doe Defendants 25 through 30 "and their supervising managerial employees . . . fail[ed] to institute appropriate policies, regarding racial profiling, including but not limited to, the unlawful stop and detention of Hispanic/Latinos at higher rates than other racial groups" and that there was "inadequate training . . . with respect to racial profiling, including but not limited to, the unlawful stop and detention of Hispanic/Latinos at higher rates than other racial groups."  (*Id.* (quoting SAC ¶ 41).)  Ms. Brockman additionally refers without citation to recent admissions by the Sheriff's Department that the Department "suffers from unconstitutional racial and identity profiling."  (*Id.* at 22.)

Cities, counties, and other local government entities are subject to claims under 42 U.S.C. § 1983.  *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  While municipalities, their agencies, and their supervisory personnel cannot be held liable under § 1983 on any theory of *respondeat superior* or vicarious liability, they can, however, be held liable for deprivations of constitutional rights resulting from their formal policies or customs.  *Id.* at 691-93.  Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  *Id.* at 694.  "[P]laintiffs must establish that 'the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation [they] suffered.' "  *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (alteration in original) (quoting *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007)).

"[A] 'policy' is a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.' "  *Fogel v. Collins*, 531 F.3d 824,

834 (9th Cir. 2008) (omission in original) (quoting *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002)).  A municipality with otherwise facially-constitutional policies may face § 1983 liability for failing to act if a plaintiff can demonstrate:  "(1) that a county employee violated the plaintff's constitutional rights; (2) that the county has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights."  *Long v. County of Los Angeles*, 442 F.3d 1178, 1185-86 (9th Cir. 2006).

Having already concluded that Ms. Brockman has stated a plausible claim for relief for violations of her Fourth Amendment rights, the Court turns to whether she has plausibly alleged deliberate indifference and causation on the part of the County.  Although failing to adequately train employees or to implement "affirmative policies or procedures to guide employees can amount to deliberate indifference," *id.* at 1186-89, Ms. Brockman's allegations of municipal liability do not extend beyond conclusory allegations.  Her Complaint does not identify any specific policies or omissions that would suggest deliberate indifference, *see id.* at 1189-90 (discussing tangible examples of municipalities at least allegedly failing to implement policies), and she has not provided any facts in her Complaint suggesting that the Deputy Defendants had a history of Fourth Amendment violations or that the County otherwise knew or had reason to know of such impending violations, *see id.* at 1186.

A plaintiff can "succeed in proving a failure-to-train claim without showing a pattern of constitutional violations where 'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.' "  *Id.* (quoting *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).  In *Long v. County of Los Angeles* for example, a plaintiff argued that Los Angeles County acted with deliberate indifference regarding its training and policy practices when a person with a known, but stable, preexisting health condition succumbed

to his medical condition within 20 days of being admitted to the County jail.  *Id.* at 1181-83.  The Ninth Circuit reversed the district court's grant of summary judgment for the municipality because it found the plaintiff had adequately pleaded facts demonstrating the County behaved with deliberate indifference, including:  failing to train medical staff to document, monitor, and assess patient conditions and needs; failure to train its employees to implement a facially valid policy; and "failure to develop and implement necessary policies including a fall policy, a transfer policy, and a policy requiring prompt medical assessment in the event that an inmate refuses an essential medical treatment such as oxygen." *Id.* at 1188-89.  The plaintiff had additionally alleged that the County knew about the person's medical condition beforehand and that its medical facility "was not equipped to care for acutely ill patients." *Id.* at 1188.  In contrast, Ms. Brockman has not alleged any facts that would plausibly suggest that the County knew or should have known that its Deputy Defendants were likely to violate the Fourth Amendment, nor has she specifically pointed to any policies or training practices absent or in place that would plausibly suggest deliberate indifference by the County.  Her references to Sheriff's Department admissions that "the department suffers from unconstitutional racial and identity profiling" are without citation and unpersuasive.  *See Rivas v. New Century Mortg. Corp.*, No. 09cv737, 2010 WL 330225, at *3 (S.D. Cal. Jan. 20, 2010).

The Court GRANTS the Defendant's motion to dismiss Ms. Brockman's second claim for relief, with leave to amend the deficiencies.

**D.    Ms. Brockman's Third Cause Of Action Is Not Dismissed For Failing To State A Claim.**

Ms. Brockman's third claim for relief is against the Deputy Defendants and the County for "false arrest/false imprisonment" under California Government Code § 820 and the common law, (*see* SAC ¶¶ 49-54), causing loss of liberty, (SAC ¶ 52).  She alleges that

the Deputy Defendants "intentionally deprived [Ms. Brockman] of [her[13]] freedom and movement by use of force, threats of force and unreasonable duress when [they] stopped and detained [Ms. Brockman] . . . . without reasonable suspicion" and subsequently arrested her "without probable cause."  (SAC ¶¶ 50-51.)  Ms. Brockman alleges that the County "is vicariously liable for the wrongful acts of [the Deputy Defendants] pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable fo[r] the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability."  (SAC ¶ 53.)  She again asserts that the Deputy Defendants acted maliciously, wantonly, oppressively, and with a conscious disregard for her rights.  (SAC ¶ 54.)

The Defendants argue that this third claim for relief should be dismissed because it "fails to plead the individual participation of Deputy Defendants" and that to the extent the pleadings sufficiently identify the Deputy Defendants' actions, they are protected by "lawful privilege."  (ECF No. 16-1 at 25-26.)  The Defendants do not raise any arguments concerning the County's liability.  (*Id.* (absence).)

### 1. Whether the Complaint pleads individual participation of the Deputy Defendants

The Defendants argue that Ms. Brockman "failed to coherently plead each Defendant's wrongdoing in connection with her detention and her ultimate arrest."  (*Id.* at 25.)  They argue that this cause of action fails to put each Deputy Defendant "on notice as to grounds for the allegations." (*Id.* (quoting *Eunice v. United States*, No. 12cv1635, 2013 WL 756168, at *3 (S.D. Cal. Feb. 26, 2013)).)

---

[13] The Court notes—as do the Defendants—that Ms. Brockman appears to have mistakenly used he/his pronouns when referring to herself under this claim for relief.  (*See* SAC ¶¶ 50-51.)  Ms. Brockman clarifies that this was a mistake and that she was not referring to Mr. Lomeli.  (ECF No. 23 at 22.)

1      However, the cases to which the Defendants cite as exemplifying inadequate notice

2  pleading are distinguishable.  In both *Eunice v. United States* and *Spindler v. City of Los*

3  *Angeles* the plaintiffs primarily made factual allegations to "Defendants" collectively.  *Id.*

4  at *1, 3; No. CV 16-5655, 2017 WL 10562966, at *1-3, 7 (C.D. Cal. Aug. 4, 2017).  Here,

5  aside from above-discussed insufficient allegations as to Deputy Phongkhammy and Doe

6  Defendants 1 through 30, Ms. Brockman has made factual allegations as to Deputy

7  Marcusen's, Deputy Greene's, and Sergeant Allister's involvement in her detention and

8  arrest.  (*See* SAC ¶¶ 18-28.)  Additionally, the Complaint specifies each of the Deputy

9  Defendants in the third cause of action rather than referring to them collectively as

10  "Defendants."  (*See* SAC ¶¶ 50-54.)

11      The Complaint adequately alleges the individual participation of the Deputy

12  Defendants that have not already been dismissed in this order.

13      **2.**     **Whether the Deputy Defendants are protected by "lawful**

14           **privilege"**

15      Subject to certain exceptions, California Government Code § 820 permits liability

16  for public employees "for injur[ies] caused by his act or omission to the same extent as a

17  private person."  "Under California law, the elements of a claim for false imprisonment

18  are: '(1) the nonconsensual, intentional confinement of a person, (2) without lawful

19  privilege, and (3) for an appreciable period of time, however brief.' "  *Young v. County of*

20  *Los Angeles*, 655 F.3d 1156, 1169 (9th Cir. 2011) (quoting *Easton v. Sutter Coast Hosp.*,

21  80 Cal. App. 4th 485, 496 (2000)).  California Penal Code § 847(b) proscribes civil liability

22  for a "law enforcement officer . . . acting within the scope of his or her authority, for false

23  arrest or false imprisonment arising out of any" lawful arrest.  The Defendants

24  acknowledge that "[t]he standard for determining whether an arrest was lawful for purposes

25  of privilege under California law is essentially the same as the probable-cause analysis

26

27

28

under the Fourth Amendment." (ECF No. 16-1 at 26.)  *See Peng v. Mei Chin Penghu*, 335 F.3d 970, 976 (9th Cir. 2003) (comparing analyses).

Because this Court has concluded that Ms. Brockman has raised facially plausible claims for liability for unconstitutional detention and arrest under the Fourth Amendment, it concludes that she has also raised a facially plausible claim that the Deputy Defendants are not protected by "lawful privilege."  Defendants do not challenge the other two prongs necessary for false imprisonment at this time.

The Court DENIES Defendants' motion to dismiss Ms. Brockman's third claim for relief.

### E.     Ms. Brockman's Fourth Cause Of Action Is Dismissed In Part And Her Sixth Cause Of Action Is Dismissed For Failing To State A Claim.

Ms. Brockman's fourth claim for relief alleges negligence against all Defendants.[14] (SAC ¶¶ 55-58.)   She asserts that the "actions and inactions of the Defendants were negligent" with respect to:

> A.     the failure to properly and adequately assess the need to detain and arrest [Ms. Brockman];
> B.     the negligent tactics and handling of the situation with [Ms. Brockman], including the use of racial profiling in stop, arrest and detention;
> C.     the negligent detention and arrest of [Ms. Brockman];
> D.     the failure to properly train and supervise employees, both professional and non-professional, including [Deputy Defendants] and Does 1 through 24.  (SAC ¶ 56.)

---

[14] Ms. Brockman later clarifies that she "is not seeking negligence against the governmental entity itself."  (ECF No. 23 at 24.)  The Court accordingly construes her fourth cause of action to assert negligence against all Defendants except the County, with the County being vicariously liable.

She alleges the Defendants' actions were the "direct and proximate" cause of her pain, suffering, emotional distress, and severe mental anguish, and seeks to hold the County vicariously liable for these injuries. (SAC ¶¶ 57-58.)

Her sixth cause of action alleges that the Deputy Defendants are liable for battery considering her unjustifiably harsh treatment. (SAC ¶¶ 70-73.) Despite being unarmed, compliant, and not resisting, she was allegedly handcuffed "as tight as possible causing extreme pain" and thrown off her feet into the back of a patrol cruiser. (SAC ¶ 71.) The treatment allegedly caused Ms. Brockman "severe mental and physical pain and suffering, loss of enjoyment of life, and loss of liberty." (SAC ¶ 71.) She argues that the County "is vicariously liable for the wrongful acts of [the Deputy Defendants] and Does 1 through 24 pursuant to section 815.2(a) of the California Government Code." (SAC ¶ 72.)

The Defendants move to dismiss this fourth and sixth causes of action on two grounds: failure to satisfy the California Tort Claims Act and failure to state a claim against any defendant. (ECF No. 16-1 at 26-29.)

### 1.    Whether Ms. Brockman failed to comply with the California Tort Claims Act

California law requires that, before a plaintiff may bring a state tort lawsuit against a public entity or public employee, they must first file a government claim with the relevant government entity. Cal. Gov. Code §§ 945.4, 950.2; *see Watson v. State of California*, 21 Cal. App. 4th 836, 843 (1993) ("[A] government claim must be filed with the public entity before a tort action is brought against the public entity or public employee."). The reason "is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 705 (1989) (in bank) (quoting *City of San Jose v. Superior Ct.*, 12 Cal. 3d 447, 455 (1974) (in bank)). The facts asserted in the government "claim must correspond with the facts alleged in the complaint," as must "each cause of

action" in the lawsuit be reflected in the claim. *Nelson v. State of California*, 139 Cal. App. 3d 72, 79 (1982). However, "[t]he claim . . . need not specify each particular act or omission later proven to have caused the injury. . . . Only where there has been a 'complete shift in allegations, usually involving . . . acts or omissions committed at different times or by different persons than those described in the claim,' " will the complaint be barred. *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 447 (2004) (quoting *Blair v. Superior Ct.*, 218 Cal. App. 3d 221, 226 (1990)). For example, a complaint seeking tort damages did not "fairly reflect" a government claim that requested only compensatory damages, *see Gong v. City of Rosemead*, 226 Cal. App. 4th 363, 377 (2014), but a complaint identifying public policy causes of actions for violations of free speech and "public employee conflicts of interest" did not constitute "additional causes of action" for a claim that had alleged wrongful termination in violation of public policy, *Stockett*, 34 Cal. 4th. at 447.

Ms. Brockman's government claim against the County described substantially similar facts to what she alleges in her complaint gave rise to her fourth cause of action. She described going to the auto parts store with Mr. Lomeli; Mr. Lomeli being detained and arrested "solely on a description of a Hispanic male"; that Ms. Brockman was simultaneously detained, arrested, and jailed for burglary on the basis that she was with a Hispanic male; that "[t]he arresting officers had absolutely no probable cause or reasonable suspicion"; and that the events amounted to "illegal and unconstitutional racial profiling." (ECF No. 16-3 at 9.) She did not describe being handcuffed "as tight as possible causing extreme pain" or being thrown "into the back of a . . . patrol cruiser." (*See* ECF No. 16-3 at 9 (absence).) In describing her injuries, Ms. Brockman listed: "statutory damages, civil rights deprivation, psychological damages, including but not limited to emotional distress, pain and suffering, punitive damages." (*Id.*)

The Defendants argue that Ms. Brockman's government claim alerted the County only to accusations of an unconstitutional intentional arrest, not any theory of negligence or battery.[15]  (ECF No. 16-1 at 29.)  The Court does not read the claim so narrowly.  Rather, the County likely would have been put on adequate notice that it might face allegations of negligence pertaining to Ms. Brockman's allegedly unreasonable detention and arrest.  *See Phillips*, 49 Cal. 3d at 705.  Her description of her injuries would also allow for broad means of recovery.  Ms. Brockman does not raise any substantially new facts or allegations pertaining to the reasonableness of her detention or arrest; this portion of the Complaint concerns the same events and people as alleged in the government claim.  *See Stockett*, 34 Cal. 4th at 447.

However, Ms. Brockman's government claim would not have provided sufficient information about the alleged battery for the County to adequately investigate.  *See Phillips*, 49 Cal. 3d at 705.  Ms. Brockman argues that the elements for battery—non-consensual touching done "with the intent to harm or offend plaintiff" and reasonably causing plaintiff to be harmed or offended, *see So v. Shin*, 212 Cal. App. 4th 652, 669 (2013) (concerning battery in context of medical procedure)—are naturally satisfied by her allegations in the Claim that she was unreasonably detained and arrested.  (ECF No. 23 at 28.)  The Defendants point out that California law also requires a showing of "unreasonable force" to succeed in allegations of battery against police officers.  (ECF No. 16-1 at 30-31.)  *See Monzon v. City of Murrieta*, 978 F.3d 1150, 1164 (9th Cir. 2020) (requiring showing of unreasonable force for battery claim to succeed against police officers); *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998) (same).

---

[15] The Defendants point out—but do not develop an argument—that when describing how County employees were at fault, Ms. Brockman discusses only Mr. Lomeli's injuries, not her own.  (*Id.* (referring to ECF No. 16-3 at 7).)  The Court does not consider this argument further.

1    Although unconstitutional detentions and arrests may coincide with tortious battery,

2    Ms. Brockman's Claim simply did not put the County on notice or give it reason to

3    investigate allegations of battery.  Unlike the Complaint, the Claim made no mention of

4    being handcuffed, thrown, or otherwise physically harmed during the arrest.  (*See* ECF No.

5    16-3 at 8-9 (absence).)  There was no indication that the officers used unreasonable force,

6    a required element of the tort.

7    The Court GRANTS Defendants' motion to dismiss Ms. Brockman's sixth claim for

8    relief without leave to amend because the deficiency lies in the government claim and

9    cannot feasibly be remedied.

10                    **2.     Whether Ms. Brockman failed to state a claim against any**

11                            **defendant**

12    The Defendants argue that the fourth claim for relief is insufficiently pleaded

13    because it does not identify "any *individual* Deputy Defendant who acted negligently, any

14    specific act or omission that was supposedly negligent, or the specific duty that any

15    individual breached."  (*Id.* at 27.)  Also that "no named Defendant is alleged to be a

16    supervisor charged with 'train[ing] and supervis[ing] employees.' "  (*Id.* (alterations in

17    original) (quoting SAC ¶ 56).)  For support, the Defendants point to *Thomas ex rel. Thomas*

18    *v. County of San Diego* for the assertion that a plaintiff's claims are deficient if they do not

19    "link any particular negligent act to any specific individual actor."  (*Id.* (quoting No. 20-

20    cv-1979, 2021 WL 2715086, at *3 (S.D. Cal. July 1, 2021)).)  However, they again omit

21    any discussion of Ms. Brockman's factual allegations earlier in her Complaint in which she

22    links particular actions to particular defendants.  (*See, e.g.*, SAC ¶¶ 19-23 (describing

23    Deputy Greene's and Deputy Marcusen's role in allegedly unconstitutional stop).)  The

24    Defendants are correct, however, that Ms. Brockman does not identify any defendant in

25    her Complaint responsible for training or supervising the named Defendants.  Furthermore,

26    Ms. Brockman cannot plausibly assert claims of negligence for her detention and arrest

37

against the Defendants she has not alleged to have been involved in her detention and arrest. (*See* SAC ¶¶ 18-28 (describing only Deputy Defendants as being involved in arrest and detention).)  The Court therefore construes the fourth claim for relief as accusing Deputy Marcusen, Deputy Greene, and Sergeant Allister of negligence, but not the District Attorney Defendants.  The Court also DISMISSES Ms. Brockman's claim of negligence for failure to properly train and supervise as it does not appear to be linked to any specific defendant.

As to the elements of negligence, the Defendants are correct that Ms. Brockman must demonstrate that the Deputy Defendants owed her a duty of care, that they breached that duty, and that the breach was a proximate or legal cause of her injuries. (ECF No. 16-1 at 26.)  They argue that Ms. Brockman fails to specify any acts or omissions that were allegedly negligent nor any duty that was breached.  (*Id.* at 27.)  Ms. Brockman responds that the Deputy Defendants had a duty to act reasonably and points to her allegation that they "fail[ed] to properly and adequately assess the need to detain and arrest [Ms. Brockman]."  (ECF No. 23 at 24.)  The Complaint also contains other allegations tending to suggest that the Deputy Defendants may have acted unreasonably, such as stopping Ms. Brockman and Mr. Lomeli without reasonable suspicion and subsequently arresting them without probable cause.  (*See* SAC ¶¶ 19-28.)

At this stage, the Court concludes that Ms. Brockman has sufficiently alleged facts that, taken as true, state a claim for negligence for which relief can be granted.

The Court GRANTS Defendants motion to dismiss Ms. Brockman's fourth cause of action as far as it pertains to the District Attorney Defendants, the County, and negligence for failure to properly train and supervise employees.  Ms. Brockman is granted leave to amend this claim.

///

1
2
### F.    Ms. Brockman's Fifth Cause Of Action Is Not Dismissed For Failing To State A Claim.

3
4
5
6
7
8
9
10
11
Ms. Brockman's fifth claim for relief seeks to recover under California's Bane Act for the alleged Fourth Amendment violations.  (SAC ¶¶ 60-64.)  She seeks to hold the Deputy Defendants liable for these violations, and the County vicariously liable.  (SAC ¶¶ 62-68.)  The Defendants move to dismiss this claim under two theories:  (1) Ms. Brockman failed to allege that her constitutional rights were violated, and (2) Ms. Brockman failed to allege independent coercion.  (ECF No. 16-1 at 29-30.)  Because the Court has already determined that Ms. Brockman has raised a facially plausible claim for Fourth Amendment violations, the Court turns to the extent to which Ms. Brockman was required to and has alleged independent coercion.

12
13
14
15
16
17
18
19
20
21
22
23
California Civil Code § 52.1 encodes the Tom Bane Civil Rights Act ("Bane Act").  The Bane Act "provides that if a person interferes, or attempts to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of the constitutional or statutory rights of 'any individual or individuals,' . . . . '[a]ny individual' so interfered with [is allowed] to sue for damages."  *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 841 (2004) (quoting Cal. Civ. Code § 52.1).  The Defendants argue that the Complaint does not contain "any allegations of excessive force or other coercion on the part of any of the named . . . Defendants" such that dismissal is required.  (ECF No. 16-1 at 30.)  Ms. Brockman argues that courts are split as to the extent to which "threats, intimidation, or coercion" must be pleaded independent of the constitutional violation.  (ECF No. 23 at 26-27.)  Regardless of the pleading requirements, she argues that her factual allegations satisfy the higher pleading requirement.  (*See id.* at 27.)

24
25
26
California case law has confirmed that recovery under the Bane Act is limited to situations where the offending person or persons utilized threats, intimidation, or coercion. *See Venegas*, 32 Cal. 4th at 841, 843; *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 331-32 (1998).

27
28

1    Still somewhat unsettled is whether a plaintiff must allege threats, intimidation, or coercion

2    beyond those inherent in the alleged constitutional violation.  For example, the California

3    Court of Appeal for the Second District held that when a plaintiff was unintentionally

4    detained beyond his ordered release, due to a likely negligent clerical error, the Bane Act

5    required "a showing of coercion independent from the coercion inherent in the wrongful

6    detention itself."  *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 959-62 (2012).

7    The Court appeared to draw a line in which allegations of threats, intimidation, or coercion

8    would be required more so in cases involving mistake or human error, rather than

9    intentional violations.  *Id.* at 959 ("The apparent purpose of the [Bane Act] is not to provide

10   relief for an overdetention brought about by human error rather than intentional conduct.").

11   The Court of Appeal for the Third District of California has bolstered the "threats,

12   intimidation, or coercion" requirement by holding that absent claims of excessive or

13   unreasonable force, or intimidation, plaintiffs' allegations that police threatened to arrest

14   plaintiffs' and confiscate belongings were insufficient to support recovery under the Bane

15   Act when they were subsequently arrested.  *Allen v. City of Sacramento*, 234 Cal. App. 4th

16   41, 46, 66-70 (2015).  The Court of Appeal interpreted *Shoyoye*'s holding to "require[] a

17   showing of coercion independent from the coercion inherent in the" alleged constitutional

18   violation.  *Id.* at 68.

19        The Court of Appeal for the First District of California and the Ninth Circuit have

20   both come out the other way.  In *Cornell v. City & County of San Francisco*, the Court of

21   Appeal held that where "an unlawful arrest is properly pleaded and proved, the

22   egregiousness required by Section 52.1 is tested by whether the circumstances indicate the

23   arresting officer had a specific intent to violate the arrestee's right to freedom from

24   unreasonable seizure, not by whether the evidence shows something beyond the coercion

25   'inherent' in the wrongful detention."  17 Cal. App. 5th 766, 801-02 (2017).  After

26   considering *Cornell*, the Ninth Circuit held that "the Bane Act does not require the 'threat,

27

28

intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged" and that there is a requirement of "specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting *Cornell*, 17 Cal. App. 5th at 801); *see also Rodriguez v. County of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018) ("We conclude from [California Court of Appeal] decisions that in excessive force cases, including Eighth Amendment cases, § 52.1 does not require proof of coercion beyond that inherent in the underlying violation.").

Regardless of whether Ms. Brockman is required to allege more than the level of threats, coercion, or intimidation inherent in an unconstitutional detention and arrest, she has met that burden at this stage.  She has alleged that, prior to being threatened with jail time and told to admit to stealing the purse, (SAC ¶ 26), she was "handcuffed as tight as possible" and picked up "off her feet and [thrown] into the back of a . . . patrol cruiser," (SAC ¶ 25).  This threat of arrest in combination with alleged acts of violence could plausibly instill reasonable fear that, because of the threat, violence could be committed against Ms. Brockman "and that the person threatening violence had the apparent ability to carry out that threat."  *See Allen*, 234 Cal. App. 4th at 66.  Comments by Deputy Marcusen that Ms. Brockman's 15-year-old dog would be sent to the pound if she did not admit to the crime, (SAC ¶ 28), could also plausibly constitute threatening, coercive, and intimidating behavior.

The Court DENIES the Defendants' motion to dismiss Ms. Brockman's fifth claim for relief.

**H.    Ms. Brockman's Seventh Cause Of Action Is Dismissed For Failing To State A Claim.**

Ms. Brockman's seventh claim for relief alleges First Amendment violations against the Deputy Defendants and the District Attorney Defendants under 42 U.S.C. § 1983.

22-CV-0512-GPC-BLM

(SAC ¶¶ 74-87.)  She describes a timeline whereby Deputy Marcusen told her on May 12, 2021 that criminal charges would not be filed against her for the alleged purse theft, (SAC ¶ 76); about two weeks later she and Mr. Lomeli contacted the County about their wrongful arrest and detention and submitted formal Public Records Requests to the San Diego County Sheriff's department, (SAC ¶¶ 77-79); on August 25 criminal charges were filed against Ms. Brockam and Mr. Lomeli, (SAC ¶ 80); on October 22 Ms. Brockman served a claim for damages with the County, (SAC ¶ 81); charges were dismissed against both Ms. Brockman and Mr. Lomeli on November 15 for lack of evidence, (SAC ¶ 82); the County rejected Ms. Brockman's claims for damages two weeks later, (SAC ¶ 83); and on December 7 charges were again issued against both Ms. Brockman and Mr. Lomeli before being dismissed in January 2022 for lack of evidence, (SAC ¶ 84).  Ms. Brockman alleges this timeline of events amounts to unlawful retaliation against her for exercising her First Amendment rights in order to either cover up her unlawful arrest and detention or to dissuade civil action related to the matter.  (SAC ¶ 85.)  Because this cause of action concerns retaliation in the form of filing criminal charges, (SAC ¶¶ 85-87), and neither the Complaint nor Ms. Brockman's opposition to Defendants' motion to dismiss allege that the Deputy Defendants brought, or conspired to bring, *see Lacey v. Maricopa County*, 693 F.3d 896, 934-39 (9th Cir. 2012) (discussing civil conspiracy claim in context comparable to that before this Court), *superseded on other grounds by statute, as stated in Hensley v. Bank of N.Y. Mellon*, No. CV-12-01248, 2013 WL 791294, at *7 (D.Ariz. Mar. 4, 2013), criminal charges against her, the Court construes the claim as seeking relief only against the District Attorney Defendants.

The Defendants argue that this claim for relief must be dismissed because the District Attorney Defendants are immune from liability.  (ECF No. 16-1 at 32-33.)  Ms. Brockman appears to argue that prosecutors are protected from liability only by qualified immunity.

1   (ECF No. 23 at 28 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (describing no-

2   longer-applicable test for whether *qualified* immunity replies)).)

3        "[P]rosecutors are absolutely immune from liability in § 1983 lawsuits" for

4   "prosecutorial actions that are 'intimately associated with the judicial phase of the criminal

5   process.' " *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (quoting *Imbler v.*

6   *Pachtman*, 424 U.S. 409, 430 (1976)).   The United States Supreme Court has expressly

7   held that "pretrial court appearances by the prosecutor in support of taking criminal action

8   against a suspect" are protected by absolute immunity. *Burns v. Reed*, 500 U.S. 478, 492

9   (1991).   Absolute immunity from damages applies even when prosecutors are alleged to

10  have acted in bad faith or maliciously.   *See Imbler*, 424 U.S. at 427.   "Prosecutors are

11  absolutely immune from liability for the consequences of their advocacy, however inept or

12  malicious, because it is filtered through a neutral and detached judicial body; they are not

13  necessarily immune for actions taken outside this process, . . . like gathering evidence, . . .

14  [or] providing legal advice to the police."   *Lacey*, 693 F.3d at 913.   Accordingly, a

15  prosecutor working within the court system to bring criminal charges is entitled to absolute

16  immunity, whereas one that circumvents the system is not.   *See id.* at 913-14 (concluding

17  prosecutor not entitled to absolute immunity when he circumvented state law for obtaining

18  grand jury subpoenas and ordered arrests).

19       Ms. Brockman alleged that she twice received notice of criminal charges issued

20  against her, (*see* SAC ¶¶ 80, 84), but makes no allegation that the District Attorney

21  Defendants were operating extrajudicially or in a way that would allow the Court to find

22  they are not entitled to absolute immunity.   The Court GRANTS the Defendants' motion

23  to dismiss Ms. Brockman's seventh cause of action with leave to amend.

24  **IV.   CONCLUSION**

25       For the reasons explained above, the Court GRANTS Defendants' motion to

26  dismiss Doe Defendants and Deputy Phongkhammy with leave to amend.   The Court

DENIES Defendants' motion to dismiss Ms. Brockman's First, Third, and Fifth claims for relief.  The Court GRANTS IN PART Defendants' motion to dismiss Ms. Brockman's Fourth claim for relief.  The Court GRANTS Defendants' motion to dismiss Ms. Brockman's Second, Sixth, and Seventh claims for relief.  The Court GRANTS Ms. Brockman leave to amend her Second, Fourth, and Seventh claims for relief.  Amendments to the Complaint must be submitted within thirty (30) days of this Order.

Additionally, having already ordered the consolidation of case numbers 22-CV-512 and 22-CV-684, (ECF No. 15), the Court ORDERS that, regardless of whether Ms. Brockman makes the permitted amendments to her Complaint, that she and Mr. Lomeli shall file a single, consolidated amended complaint within thirty (30) days after the entry of this Order.

**IT IS SO ORDERED.**

Dated:  October 27, 2022

Hon. Gonzalo P. Curiel
United States District Judge

22-CV-0512-GPC-BLM